# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PATRICK JACKSON,** | : | CIVIL NO. 3:15-cv-2394 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **A. MARTINEZ,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Patrick Jackson, ("Jackson" or "plaintiff"), a federal inmate incarcerated at the United States Penitentiary at Allenwood ("USP-Allenwood"), White Deer, Pennsylvania, filed this Bivens-type[1] civil rights action on December 14, 2015, naming the following individuals as defendants: A. Martinez and K. Duke, registered nurses; B. Buschman, a physician and commissioned officer of the United States Public Health Service; and, M. Magvar, Assistant Health Services Administrator.   (Doc. 1).

Jackson alleges that "[d]uring the time period(s) of October 1st through November 4th, 2015 at U.S.P. Allenwood, certain and specific health-care employees 'wilfully, knowingly,' and 'with wanton recklessness' did violate plaintiff's Constitutionally-and-civilly protected health-care treatment(s) prescribed previously by medical doctors."   (Doc. 1, p. 6). Specifically, he alleges that between October 1and November 4, 2015, Defendants denied him adequate medical care with regard to the administration of post-surgery medication.

---

[1] See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

(Id.)

Presently pending is Defendants' motion (Doc. 15) to dismiss pursuant to Federal Rule of Civil Procedure 12(b), or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). For the reasons set forth below, the motion for summary judgment will be granted.

**I.     Summary Judgment Standard of Review**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id.; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of

a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996).  Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  FED. R. CIV. P. 56; Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); Wooler v. Citizens Bank, 274 F. App'x 177, 179 (3d Cir. 2008).  The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex,. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).  "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'"  Picozzi v. Haulderman, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)).  "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

**II.     Statement of Material Facts**

The BOP Administrative Remedy Program is a multi-tier process that is available to

3

inmates confined in institutions operated by the BOP for review of an issue which relates to any aspect of their confinement. (Doc. 17-1 ,p, 81, ¶ 3, citing 28 C.F.R. §542 *et seq*.). An inmate must initially attempt to informally resolve the issue with institutional staff by completing a BP-8 form. (Id. citing 28 C.F.R. § 542.13(a)). If informal resolution fails an inmate may submit a request *via* a BP-9 form to the Warden within 20 days of the date on which the basis for the request occurred. (Id., citing 28 C.F.R. § 542.14(a)). An inmate who is dissatisfied with the Warden's response may submit an appeal using a BP-10 form to the Regional Director of the BOP within 20 days of the date the Warden signed the response. (Id., citing 28 C.F.R. § 542.15(a)). The Regional Director has 30 calendar days to respond to the appeal. (Id., citing 28 C.F.R. § 542.18). If the Regional Director denies the appeal, the inmate may then appeal to the BOP's Central Office within 30 days of the denial. (Id.). Appeal to the Central Office is the final administrative appeal. (Id.). If a remedy is rejected, it is returned to the inmate and the inmate is provided with a written notice explaining the reason for the rejection. (Id.) A copy of the remedy is not maintained by the BOP. (Id. at 10).

Jackson alleges that from "October 1st through November 4th, 2015," Defendants denied him adequate medical care with regard to the administration of post-surgery medication. (Doc. 1, p. 6). A February 29, 2016 search of BOP records revealed that Jackson filed administrative Remedy No. 842214 on November 16, 2015, seeking administration of full doses of his medication, Vancomycin. (Doc. 17, ¶¶ 60-62). The Warden denied the remedy on November 23, 2015. (Id. at 63). Jackson appealed the denial

4

to the Regional Office on December 18, 2015. (Id. at 64). The Regional Office rejected the remedy on December 21, 2015, with the following rejection codes: UTR, untimely; MEM, Staff verification stating reason untimely filing was not your fault; OTH, Other, see remarks; and RSR, You may resubmit in proper form within 10 days.. (Id. at 65). On January 27, 2016, Jackson appealed to the Central Office. (Id. at 66). On February 2, 2016, the Central Office rejected the appeal and returned it to Jackson with the following rejection codes: WRL, Wrong level; DIR, Agree with prior rationale for rejection, follow direction on prior rejection notices; and , OTH, Other, see remarks. (Id. at 67). Jackson took no further action with regard to this administrative remedy.

## III.     Discussion

Defendants seek an entry of summary judgment on the grounds that Jackson failed to fully exhaust his administrative remedies, as required by 42 U.S. C. § 1997e(a). The Prison Litigation Reform Act of 1996 (the "PLRA") "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016); see Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."). The text "suggests no limits on an inmate's obligation to exhaust– irrespective of 'special circumstances.'" Id. "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. See Miller v. French, 530 U.S. 327, 337, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (explaining that "[t]he mandatory 'shall'

... normally creates an obligation impervious to judicial discretion")." Id. at 1856-57.

Significantly, "the PLRA contains its own, textual exception to mandatory exhaustion," *i.e.* the PLRA requires exhaustion of "available" administrative remedies. Id. at 1858. "Available" is defined as "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." Id. at 1858-59, quoting Booth v. Churner, 532 U.S. 731, 737-38 (2001). There are three instances in which administrative remedies are unavailable. "First, as Booth made clear, an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end–with officers unable or consistently unwilling to provide relief to aggrieved inmates." Id. at 1859. "Next an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id.

The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' " Id. at 93 (quoting Porter v. Nussle, 534 U.S. 516,

6

525 (2002).). The requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." Woodford, 548 U.S. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228–29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 211–212 (2007).

Finally, whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. See Small v. Camden County, 728 F.3d. 265, 268 (3d Cir. 2013); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010).

The PLRA requires Jackson to pursue administrative relief with regard to his Bivens claims prior to filing suit in federal court. It is clear that Jackson commenced the administrative review process with regard to his claim concerning the distribution of his medication. It is equally clear that he failed to properly pursue the process to final review.

Jackson filed administrative Remedy No. 842214 on November 16, 2015, seeking administration of full doses of his medication. (Doc. 17, ¶¶ 60-62). The Warden denied the remedy on November 23, 2015. (Id. at 63). He appealed the denial on December 18, 2015; the Regional Office rejected the appeal on December 21, 2015, because it was filed more than twenty days after the Warden denied the initial remedy. See 28 C.F.R. § 542.15(a)); Id. at 64). However, the Regional Office afforded Jackson ten days to resubmit the appeal in

7

proper form with a staff verification indicating that the untimely filing was not his fault. (Doc. 17, ¶ 65). Jackson did not resubmit the appeal. Instead, approximately 37 days later, on January 27, 2016, he appealed to the Central Office. The Central Office rejected the appeal on February 2, 2016, because Jackson failed to follow directions on the prior rejection notice and submitted the appeal to the wrong level. According to the record, Jackson took no further action.

The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). Jackson has failed to meet this burden. In an effort to excuse compliance with the exhaustion requirement, and overcome an entry of summary judgment, Jackson declares that "[t]he mailroom staff prevented my administrative remedies from being delivered. The staff and defendants were working together to prevent me from exhausting my administrative remedy in order to place me in a procedural trap to have my law suit dismissed in the future." (Doc. 24, ¶ 4). This conclusory statement is insufficient to establish unavailability of the administrative process, which requires an inmate to demonstrate that prison administrators thwarted him from taking advantage of a grievance process through machination, misrepresentation, or intimidation. Ross, 136 S. Ct. at 1857. The record clearly demonstrates that the failure to exhaust squarely rests on Jackson in that he failed to properly utilize the administrative review process. He filed untimely appeals, ignored opportunities to cure the deficiencies of his appeals, and filed

at the wrong level.  As noted *infra*, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly  structure on the course of its proceedings."  Woodford, 548 U.S. at 90–91.  It is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.  Jones, 549 U.S. at 211–212.

Jackson failed to properly exhaust his administrative remedies as required by the BOP and now his claims are procedurally defaulted.  See Spruill, 372 F.3d at 232.  Accordingly, he is barred from proceeding in federal court.  Defendants' motion for summary judgment will be granted.

**IV.     Conclusion**

Based on the foregoing, Defendants' motion (Doc. 15) for summary judgment will be granted.

An appropriate Order will enter.

                                              **BY THE COURT:**

                                              **s/James M. Munley**
                                              **JUDGE JAMES M. MUNLEY**
                                              **United States District Court**

Dated:    March 2, 2017